

**ORDERED in the Southern District of Florida on July 25, 2012.**

A. Jay Cristol, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                                           Case No. 11-31948-BKC-AJC
                                                                Chapter 11

TRAILER PARK ACQUISITION, LLC

        Debtor.

_____/

TRAILER PARK ACQUISITON, LLC                                    Adv. Proc. No. 11-02728-AJC

        Plaintiff,

v.

BRANCH BANKING & TRUST COMPANY,
a National Bank, ZIVA DABACH, an individual,
SHARON BRANDT, an individual, and
MICHAEL BRANDT, an individual,

        Defendants.

_____/

**MEMORANDUM DECISION ON MARSHALING CLAIM**

1

This matter came before the Court at a hearing[1] on February 23, 2012 on the following motion for partial summary judgment, response and reply filed by Defendant, Branch Banking and Trust Company ("BB&T") and Plaintiff, Trailer Park Acquisition, LLC ("Debtor") concerning Count III (Marshaling of Assets) of the Debtor's Complaint [ECF No. 1] (the "Complaint") and the defenses of failure to state a cause of action for marshaling asserted by BB&T in its Answer and Affirmative Defenses to Plaintiff's Complaint [ECF No. 27]: (1) BB&T's Motion for Partial Summary Final Judgment on Debtor's claim for Marshaling of Assets (III) [ECF No. 38]; (2) Debtor's Omnibus Response to BB&T's Motions for Summary Judgment (as to ECF No. 38) [ECF No. 77]; and (3) BB&T's Reply to Debtor's Omnibus Response to BB&T's Motions for Summary Judgment [ECF No. 77] [ECF No 80].

The Court has considered the arguments of counsel at the hearing, the court papers of the adversary proceeding and the above captioned Bankruptcy Case (the "Bankruptcy Case"), the documents and transcripts of witness depositions and the trial testimony from a contested matter

---

[1]     At the February 23, 2012 hearing, the Court also considered the following motions and responses filed in this Adversary Proceeding and which will be addressed in separate orders of the Court: (1) BB&T's Motion for Partial Summary Judgment on Debtor's Avoidance Actions Under 11 U.S.C. §§ 548 and 544 (b) and Chapter 726 Florida Statutes (Counts I, IV and V) [ECF No. 33]; (2) Debtor's Motion for Partial Summary Judgment as to Counts IV and V of the Debtor's Complaint to Determine Extent, Validity, and Priority of Lien [ECF No. 30]; (3) BB&T's Motion for Partial Summary Judgment and Supporting Memorandum of Law as to the Authority of Ziva Dabach and Response to Debtor's Motion for Summary Judgment as to Counts IV and V of the Adversary Complaint [ECF No. 46]; (4) BB&T's Supplemental Response and Memorandum of Law in Opposition to Debtor's Motion for Partial Summary Judgment as to Counts IV and V of the Debtor's Complaint to Determine Extent, Validity and Priority of Lien [ECF No. 76]; (5) Debtor's Omnibus Response to BB&T's Motions for Summary Judgment (as to ECF Nos. 33 and 46) [ECF No. 77]; (6) BB&T's Reply to Debtor's Omnibus Response to BB&T's Motions for Summary Judgment [ECF No. 77] [ECF No. 80]; (7) Debtor's Reply to BB&T's Supplemental Response to Debtor's Motion for Partial Summary Judgment as to Counts IV and V of the Debtor's Complaint [ECF No. 81]; (8) BB&T's Motion to Alter, Amend or Clarify This Court's January 18, 2012 Order Granting Motion to Dismiss Counts II and III [ECF Nos. 49 and 50] [ECF No. 69]; and (9) Debtor's Response to BB&T's Motion to Alter, Amend or Clarify This Court's January 18, 2012 Order Granting Motion to Dismiss [ECF No. 83].

tried before this Court in the Bankruptcy Case and filed with the Court in this adversary proceeding.

Pursuant to Count III of the Complaint (the "Marshaling Claim"), the Debtor asserts a right, as a junior hypothetical judgment lien creditor of the Debtor's property under 11 U.S.C. § 544(a), to compel BB&T to resort to other assets available under its *Mortgage Modification Cross-Default Cross Collateralization Spreader Agreement* ("Mortgage Modification") and other loan documents entered into by BB&T and Palm Lake Mobile Home Park, LLC ("Palm Lake"), the predecessor in title of the Debtor's property located at 7600 NW 27 Avenue, Miami, Florida (the "Palm Lake Mobile Home Park"). [ECF No. 1, Ex. 2.]  The Debtor alleges that it has two available funds to compel marshaling: the Palm Lake Mobile Home Park and the alleged right of the Debtor to seek indemnity and/or contribution from the individual guarantors of BB&T's loans to Palm Lake, co-defendants, Ziva Dabach, Sharon Brandt and Michael Brandt (the "Guarantors").   The issue presented by BB&T's motion for partial summary judgment is whether, as a matter of law, the Debtor may compel marshaling of assets against BB&T, requiring it to seek recovery on its guarantees from the Guarantors before seeking recovery from the Palm Lake Mobile Home Park.

### I.  <u>Material Facts As To Which There Is No Genuine Dispute</u>

None of the facts described below are in dispute by the parties.

Palm Lake was formed on February 27, 2003 as a Florida Limited Liability Company. Section 2 of the April 14, 2003 Agreement, which governs the operations and business affairs of Palm Lake and was signed by its initial two members, states the following purpose for forming Palm Lake [ECF No. 30, Ex. 5]:

> The purpose of the Company is the purchase, development, construction and operation of real property as and for a mobile home park in Miami-Dade County Florida known as Palm Lake

Mobile Home Park located at 7600 NW 27th Ave., Miami, FL (herein referred to as the Mobile Home Park).

Palm Lake took its initial mortgage loan from BB&T's predecessor, Commercial Bank of Florida, on April 15, 2003 when it signed a *Promissory Note and Mortgage and Security Agreement*. [ECF No. 46, Exs. 2 and 3.] Palm Lake and Commercial Bank of Florida restructured and increased the loan, and Palm Lake signed a new promissory note and a *Mortgage Modification, Extension and Future Advance Agreement* on October 27, 2004. [ECF No. 46, Exs. 4 and 5] The Guarantors signed continuing guarantees of payment of Palm Lake's debt to BB&T's predecessor, Commercial Bank of Florida.

On April 29, 2010, Palm Lake signed a *Forbearance and Loan Modification Agreement* ("Forbearance Agreement") and the Mortgage Modification, both effective as of April 22, 2010. [ECF No. 1, Comp. Ex. 2.] When it signed the Forbearance Agreement and Mortgage Modification, Palm Lake was joined by eight of its affiliates (the "Palm Lake Affiliates")[2], all of whom were also borrowers of BB&T and whom owned or controlled five other mobile home parks that were mortgaged to BB&T. In connection with the Forbearance Agreement, the Guarantors reaffirmed their continuing guarantees.

At the time the Forbearance Agreement and Mortgage Modification were signed, Palm Lake owned the Palm Lake Mobile Home Park, which is currently owned by the Debtor. Sections 4 and 5 of the Forbearance Agreement require Palm Lake and the Palm Lake Affiliates to sign and record the Mortgage Modification, to make a number of payments to BB&T, and to fund accounts at BB&T. The Mortgage Modification provides that the loans of Palm Lake and the Palm Lake Affiliates are cross-defaulted, and the Palm Lake Mobile Home Park and

---

[2]    The Palm Lake Affiliates are: (a) Pink Citrus Mobile Home Park, LLC, (b) Tampa Sun Mobile Home Park, LLC, (c) Tampa Sun Trailor, LLC, (d) Pine Oaks Mobile Home Park, LLC, (e) Broadway Mobile Homes, LLC, (f) Valrico Town & Country Mobile Home Park, LLC, (g) Valrico Mobile Homes, LLC, and (h) Broadway East Tampa, LLC.

Affiliates' mobile home parks and loans are cross-collateralized so that each mobile home park serves as security for Palm Lake's and the Palm Lake Affiliates' loans from BB&T.  The Mortgage Modification was recorded in the public records of Miami-Dade County, Florida on April 29, 2010.

On January 5, 2011, after the Mortgage Modification was recorded, the Debtor purchased the Palm Lake Mobile Home Park at a Miami-Dade County Sheriff's execution lien sale for a $200 bid.  It voluntarily filed its Bankruptcy Case on August 4, 2011, and it filed the Complaint on October 25, 2011.  The Debtor is not a party to the Forbearance Agreement or the Mortgage Modification and did not exist at the time the documents were entered into by BB&T, Palm Lake and the Palm Lake Affiliates.  The Debtor did not agree to assume Palm Lake's obligations to BB&T when it purchased the Palm Lake Mobile Home Park.

## II.  Arguments Of The Parties

BB&T argues that the Debtor's Marshaling Claim fails to state a cause of action because the necessary elements of a marshaling claim are not present in this case.  In response, the Debtor argues that BB&T's motion for partial summary judgment as to the Debtor's Marshaling Claim is moot as a result of this Court's *Order Granting Motion to Dismiss Counts II and III of the Complaint Against Sharon Brandt, Michael Brandt and Ziva Dabach* [ECF No. 49].  However, that Order is subject to a pending motion to alter, amend or clarify [ECF No. 69].  Consequently, the Court will address the merits of BB&T's motion for partial summary judgment on the Marshaling Claim.

## III.  Discussion

Under Florida law, "the doctrine of marshaling of assets provides that if one creditor has an interest in two properties belonging to the debtor, and another creditor has an interest in one of those properties, then the first creditor can be compelled initially to seek his recovery from the

property not secured by the second creditor. This lessens the chance that the second creditor may lose his security solely at the whim of the first creditor's choice of property to pursue." *Ruppel v. Amerifirst Development Co. of Central Fla.*, 423 So. 2d 591, 592 (Fla. Dist. Ct. App. 1982).

Bankruptcy courts apply the same three elements required to invoke the doctrine of marshaling as do the Florida courts. There must be: "(i) two creditors of the same debtor; (ii) two or more funds belonging to that debtor; and (iii) one creditor with the right to resort to both funds with the other creditor having rights against only one." *In re Talmo*, 192 B.R. 272, 275 (Bankr. S.D. Fla. 1996). In the *Talmo* case, the Court granted a junior judgment lien holder's request for marshaling over the objection of the Chapter 7 trustee who argued that the interests of general unsecured creditors should overcome a junior secured creditor's marshaling right. The Court agreed with the junior lien creditor that the concerns of unsecured creditors were not a relevant consideration when determining whether to invoke the marshaling doctrine. *In re Talmo*, 192 B.R. at 275.

Here, the Debtor seeks to assert the rights and powers of a hypothetical judicial lien creditor of the Debtor at the time of the commencement of this case to recover property for the benefit of the estate's unsecured creditors. Under certain circumstances, a bankruptcy court will invoke the marshaling doctrine against secured creditors and in favor of unsecured creditors, when it is clear that the secured creditors are over-secured and will not be harmed by marshaling. *See In re John P. Hale*, 141 B.R. 225 (Bankr. N.D. Fla. 1992). In the *Hale* case, the debtor held an undivided tenant in common interest in two different properties. Each of the properties had a different mortgagee. The mortgagees stipulated that they each had equity cushions of 29% and 33% on each property; however, because the debtor's undivided interest was a fraction of each of the properties, the mortgagees had deficiency claims in the debtor's estate. Therefore, under the

6

debtor's Chapter 11 reorganization plan, the mortgagees could bifurcate their claims and receive distributions on their unsecured deficiency claims.   The *Hale* court granted the marshaling request of an unsecured creditor that did not have security for its debt because the stipulated value of the properties clearly showed that the over-secured mortgagees would not be harmed by being required to resort to their collateral instead of diluting the distribution to unsecured creditors under the debtor's Chapter 11 plan.   Here, BB&T has *not* stipulated that it is over-secured under its lien on the Palm Lake Mobile Home Park and the mobile home parks of the Palm Lake Affiliates.   Consequently, at this point in the bankruptcy case, the Court is not able to determine whether BB&T would or would not be harmed by marshaling of assets.

Even though the posture of this case prevents the Court from deciding if the Debtor states a claim for marshaling based on lack of harm to the secured creditor, BB&T, the Court does determine that the Marshaling Claim fails as a matter of law because there are not two or more funds belonging to the Debtor which can be marshaled.   Specifically, the Debtor relies on its potential claims of indemnity and/or contribution against the Guarantors to assert the presence of a second fund for marshaling in addition to the Palm Lake Mobile Home Park.   However, as explained herein, the Debtor cannot maintain indemnity and contribution claims against the Guarantors to create the second fund required for marshaling of assets.

For a claim of indemnity, a relationship must exist between the indemnitor and indemnitee.   *Spolski General Contractor, Inc. v. Jett-Aire Corp. Aviation Mgm't. of Central Fla.*, 637 So. 2d 968 (Fla. Dist. Ct. App. 1994) (affirming trial court judgment on the pleadings against general contractor on its indemnity claim against paint manufacturer when there were no transactions or other relationship between general contractor and manufacturer).   Having purchased the Palm Lake Mobile Home Park at a sheriff's sale, the Debtor cannot establish the

requisite relationship with the Guarantors and, consequently, a claim for indemnity against the Guarantors.

Under Florida law, a right of contribution exists between two parties if they are co-obligors. *Helmut House Corp. v. Stoddard*, 861 So. 2d 1178 (Fla. Dist. Ct. App. 2004) (reversing a trial court judgment in favor of general contractor on its contribution claim against subcontractor because subcontractor was not a co-obligor on the owner's claims against general contractor). Here, the Debtor is not a co-obligor on the Guarantors' continuing guarantees to BB&T under Florida law because a purchaser at a sheriff's sale takes subject to, but does not assume, the mortgages on the purchased property. Therefore, the Debtor cannot maintain a claim for contribution against the Guarantors in order to state its Marshaling Claim.

Since the Debtor cannot state an indemnity or contribution claim against the Guarantors, the Marshaling Claim against BB&T must be dismissed with prejudice for failure to state a claim for which relief may be granted. It is therefore

ORDRERED AND ADJUDGED that BB&T's Motion for Partial Final Summary Judgment as to Count III of the Debtor's Complaint is GRANTED, and Count III of the Debtor's Complaint is dismissed with prejudice. The Court will enter a separate judgment consistent with this memorandum decision

### 

Order Submitted by:
Thomas R. Lehman, P.A.
LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
Miami Center – 34th Floor
201 South Biscayne Blvd.
Miami, Florida 33131
Tel: (305) 722-8996

Copies to:
Thomas R. Lehman, P.A. (Attorney Lehman shall serve a copy of this Order on all parties in interest and file a Certificate of Service reflecting same.)