

**ORDERED in the Southern District of Florida on July 25, 2012.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| In re | Case No. 11-31948-BKC-AJC |
| | Chapter 11 |
| TRAILER PARK ACQUISITION, LLC | |
| Debtor. | |

_____/

| | |
|---|---|
| TRAILER PARK ACQUISITON, LLC | Adv. No. 11-2728-BKC-AJC-A |
| Plaintiff, | |
| vs. | |
| BRANCH BANKING & TRUST COMPANY, | |
| a National Bank, ZIVA DABACH, an individual, | |
| SHARON BRANDT, an individual, and | |
| MICHAEL BRANDT, an individual, | |
| Defendants. | |

_____/

**MEMORANDUM DECISION ON DEBTOR'S AVOIDANCE ACTION**

This matter came before the Court at a hearing on February 23, 2012[1] on the motion for partial summary judgment, response and reply filed by Defendant, Branch Banking & Trust Company ("BB&T") and Plaintiff, Trailer Park Acquisition, LLC ("Debtor") concerning Count I (Avoidance and Recovery of Fraudulent Transfers), Count IV (Determination of Extent Validity and Priority of BB&T's Liens and Other Interests) and Count V (Objection to BB&T's Secured Claim) of the Debtor's Complaint [ECF No. 1] (the "Complaint") and the defenses of failure to state a claim upon which relief may be granted, lack of standing, and estoppel asserted by BB&T in its Answer and Affirmative Defenses to Plaintiff's Adversary Complaint [ECF No. 27]: (1) BB&T's Motion for Partial Summary Final Judgment on Debtor's Avoidance Actions Under 11 U.S.C. §§ 548 and 544(b) and Chapter 726, Florida Statutes (Counts I, IV and V) [ECF No. 33]; (2) Debtor's Omnibus Response to BB&T's Motions for Summary Judgment (as to ECF No. 33) [ECF No. 77]; and (3) BB&T's Reply to Debtor's Omnibus Response to BB&T's Motions for Summary Judgment [ECF No. 77] [ECF No. 80].

---

[1]     At the February 23, 2012 hearing, the Court also considered the following motions and responses filed in this Adversary Proceeding and which will be addressed in separate orders of the Court:  (1) Debtor's Motion for Partial Summary Judgment as to Counts IV and V of the Debtor's Complaint to Determine Extent, Validity, and Priority of Lien [ECF No. 30]; (2) BB&T's Motion for Partial Summary Judgment and Supporting Memorandum of Law as to the Authority of Ziva Dabach and Response to Debtor's Motion for Summary Judgment as to Counts IV and V of the Adversary Complaint [ECF No. 46]; (3) BB&T's Supplemental Response and Memorandum of Law in Opposition to Debtor's Motion for Partial Summary Judgment as to Counts IV and V of the Debtor's Complaint to Determine Extent, Validity and Priority of Lien [ECF No. 76]; (4) Debtor's Omnibus Response to BB&T's Motions for Summary Judgment (as to ECF Nos. 38 and 46) [ECF No. 77]; (5) BB&T Reply to Debtor's Omnibus Response to BB&T's Motions for Summary Judgment [ECF No. 77] [ECF No. 80]; (6) Debtor's Reply to BB&T's Supplemental Response to Debtor's Motion for Partial Summary Judgment as to Counts IV and V of the Debtor's Complaint [ECF No. 81]; (7) BB&T's Motion for Partial Summary Final Judgment on Debtor's Claim for Marshaling of Assets (Count III) [ECF No. 38] ;  (8) BB&T's Motion to Alter, Amend or Clarify This Court's January 18, 2012 Order Granting Motion to Dismiss Counts II and III [ECF Nos. 49 and 50] [ECF No. 69]; and (9) Debtor's Response to BB&T's Motion to Alter, Amend or Clarify This Court's January 18, 2012 Order Granting Motion to Dismiss [ECF No. 83].

The Court has considered the arguments of counsel at the hearing, the court papers of the adversary proceeding and the above-captioned Bankruptcy Case (the "Bankruptcy Case"), and the documents and transcripts of witness depositions and the trial testimony from a contested matter tried before this Court in the Bankruptcy Case and filed with the Court in this adversary proceeding.

The issue presented by BB&T's motion for partial summary final judgment is whether, as a matter of law, the Debtor may avoid the *Mortgage Modification Cross-Default Cross-Collateralization and Spreader Agreement* ("Mortgage Modification") entered into by BB&T and Palm Lake Mobile Home Park, LLC ("Palm Lake"), the predecessor in title of the Debtor's property located at 7600 NW 27 Avenue, Miami, Florida (the "Palm Lake Mobile Home Park"). [ECF No. 1, Ex. 2.]  If the Mortgage Modification is not avoidable, then the Palm Lake Mobile Home Park is cross-collateralized with five other mobile home park loans of affiliates of Palm Lake, resulting in the Palm Lake Mobile Home Park serving as security for six loans totaling more than $11 million.  If the Mortgage Modification is avoided by the Debtor, then the Palm Lake Mobile Home Park is not security for Palm Lake's affiliates' loans and instead, serves as security for only the Palm Lake loan of BB&T.  That loan is in the principal amount of $2,032,260.30, plus interest and other charges that may be allowed under Section 506 of the Bankruptcy Code.

## I.  <u>Material Facts As To Which There Is No Genuine Dispute</u>

None of the facts described below are in dispute by the parties.

Palm Lake was formed on February 27, 2003 as a Florida Limited Liability Company. Section 2 of the April 14, 2003 Agreement, which governs the operations and business affairs of Palm Lake and was signed by its initial two members, states the following purpose for forming Palm Lake [ECF No. 30, Ex. 5]:

> The purpose of the Company is the purchase, development, construction and operation of real property as and for a mobile home park in Miami-Dade County Florida known as Palm Lake Mobile Home Park located at 7600 NW 27th Ave., Miami, FL (herein referred to as the Mobile Home Park).

Palm Lake took its initial mortgage loan from BB&T's predecessor, Commercial Bank of Florida, on April 15, 2003 when it signed a *Promissory Note* and *Mortgage and Security Agreement.* [ECF No. 46, Exs. 2 and 3.] Palm Lake and Commercial Bank of Florida restructured and increased the loan, and Palm Lake signed a new promissory note and a *Mortgage Modification, Extension and Future Advance Agreement* on October 27, 2004.  [ECF No. 46, Exs. 4 and 5]

On April 29, 2010, Palm Lake signed a *Forbearance and Loan Modification Agreement* ("Forbearance Agreement") and the Mortgage Modification, both effective as of April 22, 2010. [ECF No. 1, Comp. Ex. 2.] When it signed the Forbearance Agreement and Mortgage Modification, Palm Lake was joined by eight of its affiliates (the "Palm Lake Affiliates")[2], all of whom were also borrowers of BB&T and whom owned or controlled five other mobile home parks that were mortgaged to BB&T.

At the time the Forbearance Agreement and Mortgage Modification were signed, Palm Lake owned the Palm Lake Mobile Home Park, which is currently owned by the Debtor. Sections 4 and 5 of the Forbearance Agreement require Palm Lake and the Palm Lake Affiliates to sign and record the Mortgage Modification, to make a number of payments to BB&T, and to fund accounts at BB&T.  The Mortgage Modification provides that the loans of Palm Lake and the Palm Lake Affiliates are cross-defaulted, and the Palm Lake Mobile Home Park and Affiliates' mobile home parks and loans are cross-collateralized so that each mobile home park

---

[2]    The Palm Lake Affiliates are: (a) Pink Citrus Mobile Home Park, LLC, (b) Tampa Sun Mobile Home Park, LLC, (c) Tampa Sun Trailor, LLC, (d) Pine Oaks Mobile Home Park, LLC, (e) Broadway Mobile Homes, LLC, (f) Valrico Town & Country Mobile Home Park, LLC, (g) Valrico Mobile Homes, LLC, and (h) Broadway East Tampa, LLC.

serves as security for Palm Lake's and the Palm Lake Affiliates' loans from BB&T. The Mortgage Modification was recorded in the public records of Miami-Dade County, Florida on April 29, 2010.

On January 5, 2011, after the Mortgage Modification was recorded, the Debtor purchased the Palm Lake Mobile Home Park at a Miami-Dade County Sheriff's execution lien sale for a $200 bid. It voluntarily filed its Bankruptcy Case on August 4, 2011, and it filed the Complaint on October 25, 2011. The Debtor is not a party to the Forbearance Agreement or the Mortgage Modification and did not exist at the time the documents were entered into by BB&T, Palm Lake and the Palm Lake Affiliates.

## II. <u>Arguments Of The Parties</u>

BB&T argues that the Debtor's avoidance claims under 11 U.S.C. §§ 544(b) and 548 (the "Bankruptcy Code Claims") fail as a matter of law because the property transferred, *i.e.,* the lien granted by Palm Lake under the Mortgage Modification, was not a transfer of an interest of the Debtor: it was a transfer of an interest in property of Palm Lake. BB&T also argues that the Debtor's avoidance claim, which the Debtor asserts directly under Chapter 726, Florida Statutes as a creditor of Palm Lake (the "State Law Claim"), fails as a matter of law because the Debtor, as a purchaser of the Palm Lake Mobile Home Park with notice of the recorded Mortgage Modification, is estopped or lacks standing to avoid or otherwise challenge the validity of the Mortgage Modification.

In response, the Debtor argues that it is a future creditor of Palm Lake and, based on this status, it has standing to bring the State Law Claim to avoid the Mortgage Modification as a fraudulent conveyance under Florida Statutes, Section 726.105, the section of the Florida Uniform Fraudulent Transfer Act that allows future creditors of debtors to bring avoidance actions to recover property to satisfy their claims. In addition, the Debtor argues that purchasers

of property are not precluded from challenging prior recorded liens on the property as a fraudulent conveyance.

### III.  Discussion

**A.  The Debtor's Bankruptcy Code Claims Fail To State A Claim Upon Which Relief May Be Granted.**

The Debtor's Bankruptcy Code Claims, which the Debtor attempts to assert against BB&T as debtor in possession and as a hypothetical unsecured creditor to the Debtor, must be dismissed with prejudice because the transfer resulting from the Mortgage Modification was a transfer made by Palm Lake and not the Debtor.

A threshold requirement of a § 548 fraudulent conveyance claim is the debtor must have held an interest in the property transferred, or at least control the property transferred.[3] *Nordberg v. Sanchez (Chase & Sanborn Corp.)*, 813 F.2d 1177 (11th Cir. 1987).  In the *Chase & Sanborn Corp.* case, the Eleventh Circuit Court of Appeals affirmed a bankruptcy court's dismissal of fraudulent conveyance claims based on a pre-petition transfer of cash through one of the debtor's checking accounts.  The basis of the court's decision was the fact that the funds transferred were neither the debtor's funds nor funds controlled by the debtor.  *Chase & Sanborn Corp.*, 813 F.2d

---

[3] The relevant portion of 11 U.S.C. § 548(a)(1) states:

> (1)  The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

11 U.S.C. § 548(a)(1).  Similarly, 11 U.S.C. 544(b)(1) states:

> (1)  Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502 (e) of this title.

11 U.S.C. § 544(b)(1).

at 1181.  The same facts exist here with respect to BB&T's Mortgage Modification:  the interests transferred as a result of the Mortgage Modification were those interests of Palm Lake, not the Debtor.  The underlying policy consideration of the *Chase & Sanborn Corp.* court's decision was to insure that the fraudulent conveyance provisions of the Bankruptcy Code were used to recover transfers that diminished the *debtor's* assets, while at the same time preventing injustice to innocent parties who, like BB&T, did not have transactions with the Debtor.  The Eleventh Circuit explained this policy as follows:

> Accordingly, we conclude that the funds were not the property of the debtor, and thus that the transfer is not avoidable.  To conclude otherwise, would confer on creditors a windfall at the expense of the named defendants who, as the creditor trustee [plaintiff] admits, were innocent of any intent to diminish the assets of the debtor."

*Chase and Sanborn Corp.*, 813 F.2d at 1182.

Although the *Chase and Sanborn Corp.* court was construing 11 U.S.C. § 548(a)(1), which allows a debtor-in-possession to "avoid any transfer…of an interest of the debtor in property," that court's holding is equally applicable to the Debtor's avoidance claim asserted pursuant to 11 U.S.C. § 544(b), which similarly requires the transfer to be avoided to be "an interest of the debtor . . . [or] obligation incurred by the debtor . . . ."  11 U.S.C. § 544(b).  It is undisputed that BB&T loans and security interests in the Palm Lake Mobile Home Park and the Palm Lake Affiliates' parks were cross-collateralized before the Debtor obtained title to the Palm Lake Mobile Home Park, and that the Debtor is not a party to the Mortgage Modification.  Since the Debtor did not make a transfer to BB&T under the Mortgage Modification, the Bankruptcy Code Claims lack any merit.

Other Florida bankruptcy courts have recognized the statutory requirement that an interest in property of the debtor must have been transferred for a debtor or trustee to maintain a

fraudulent transfer avoidance action. For example, in *Miner v. Bay Bank & Trust Co. (In re Miner)*, 177 B.R. 104 (Bankr. N.D. Fla.1994), the court dismissed with prejudice a Chapter 11 debtor's fraudulent conveyance claim brought against a lender who obtained title to a property, not owned by the debtor, but owned by the debtor's wholly owned corporation, because the transaction did not involve property of the debtor. Likewise, in *JMJ Building Co. v. Banker's Trust Co. of California (JMJ Building Co.)*, 250 B.R. 437 (Bankr. M.D. Fla. 2000), the court dismissed a Chapter 11 debtor's fraudulent conveyance claims seeking to avoid the lien of a mortgagee who was granted its lien *after* the debtor had transferred the property, more than fourteen months before the Chapter 11 case. The *JMJ Building Co.* court emphasized that the debtor's fraudulent conveyance claim was being dismissed because the interest in property granted by the mortgage was not an interest in property of the debtor. The court explained:

> Both sections [547 and 548] require that any avoidable transfer must involve 'an interest of the debtor in property.' Section 547(b); Section 548(a)(1). On the date the mortgage was recorded in Marion County, JMJ [the debtor] had no legal or equitable interest in the property and had not held any such interest since November 30, 1996.

*In re JMJ Building Co.*, 250 B.R. at 439-440. The mortgage transaction in the *JMJ Building Co.* case is the same as the transaction under BB&T's Mortgage Modification: when the additional lien against the Palm Lake Mobile Home Park was granted to BB&T, the Debtor did not hold a legal or equitable interest in the Palm Lake Mobile Home Park. Consequently, the Debtor's fraudulent conveyance claims pursuant to 11 U.S.C. §§ 548 and 544(b) are dismissed with prejudice.

**B.     Since The Debtor Is A Subsequent Purchaser With Notice Of The Recorded Mortgage Modification, Florida Law Precludes The Debtor's State Law Claim.**

The Debtor's State Law Claim is predicated upon the Debtor's claim to be a future creditor of Palm Lake based on its $450,000 claim against Palm Lake in Adversary Proceeding

No. 12-1005-BKC-AJC-A.  [ECF No. 77 at 9].[4]  However, under Florida law, the Debtor's State Law Claim against BB&T, if allowed, would nonetheless be limited under Chapter 726, Florida Statutes to the extent necessary to satisfy the Debtor's claim against Palm Lake.  *Myers v. Brook*, 708 So. 2d 607 (Fla. Dist. Ct. App. 1998); Florida Stat. § 726.108(1)(a).  In other words, the BB&T's cross-collateralized lien could not be avoided by approximately $9 million to satisfy a $450,000 claim against Palm Lake.

Debtor's State Law Claim is asserted as a creditor of Palm Lake under Section 726.105, Florida Statutes.  This Court must look to Florida law to determine whether the Debtor may maintain the State Law Claim against BB&T.  *Butner v. United States*, 440 U.S. 48, 53-55 (1979).  Florida courts have not specifically addressed the issue of whether a purchaser, who took title to property with notice of a lender's mortgage, may seek to set aside the lender's mortgage by alleging that the purchaser is a creditor of the seller. However, Florida court decisions address the question of whether a subsequent purchaser may challenge a prior recorded mortgage, and the decisions hold that the subsequent purchaser may not challenge the mortgage lien. *Spinney v. Winter Park Bldg. & Loan Ass'n*., 162 So. 899 (Fla. 1935) (affirming trial court order dismissing purchaser's complaint challenging a prior mortgage as usurious); *Eurovest, Ltd. v. Segall*, 528 So. 2d 482 (Fla. Dist. Ct. App. 1988) (reversing trial court judgment allowing purchaser to challenge a mortgage as lacking consideration or as a scam against creditors); *Nesbitt v. Citicorp Savings of Fla.,* 514 So. 2d 371 (Fla. Dist. Ct. App. 1987) (affirming trial court summary judgment of foreclosure over the purchaser's objection based on the mortgage being usurious).  The rationale of these Florida court decisions is rooted in the principal of estoppel.  *Spinney*, 162 So. at 903-904 and *Eurovest, Ltd.*, 528 So. 2d at 483.  In short, a

---

[4]       The Debtor has brought an action against Palm Lake, *Trailer Park Acquisition, LLC v. Palm Lake Mobile Home Park, LLC, et al. (In re Trailer Park Acquisition, LLC)*, Adversary No. 12-1005-BKC-AJC-A (Bankr. S.D.Fla. Jan. 3, 2012).  The Court expresses no opinion about the merits of the claims and defenses asserted in the Debtor's adversary proceeding brought against Palm Lake.

purchaser of Florida real property purchases it subject to prior recorded mortgage liens, *see* Fla. Stat. § 695.01(1); therefore, the purchaser should not be able to challenge that which it willingly took subject to.  Here, the Debtor purchased the Palm Lake Mobile Home Park for $200 with notice that it was buying the property subject to the lien of BB&T created by the Mortgage Modification, and it cannot now seek to avoid the Mortgage Modification under Florida law.

Finally, the Debtor emphasizes that the *Eurovest, Ltd. v. Segall* decision discussed, but did not decide, whether the subsequent purchaser in that case could challenge the prior recorded mortgage lien as a fraudulent conveyance.  *Eurovest, Ltd.*, 528 So. 2d at 483-484.  The *Eurovest,* court stated that the record in the court below did not support a finding of fraudulent conveyance. *Id.* Consequently, it was not necessary for that court to reach the question of whether, as a matter of law, a purchaser could seek to set aside a prior recorded mortgage lien based on it being a fraudulent conveyance.  Thus, while *Eurovest* may not directly address this issue, the Court is persuaded by the Florida court decisions prohibiting a purchaser of real property from challenging prior recorded mortgage liens by allowing the Debtor to maintain its State Law Claim. Accordingly, it is

ORDRERED AND ADJUDGED that BB&T's Motion for Partial Final Summary Judgment as to Counts I, IV and V of Debtor's Complaint is GRANTED, and Counts I, IV and V of the Debtor's Complaint are dismissed with prejudice.  The Court will enter a separate judgment consistent with this memorandum decision.

###

Order Submitted by:
Thomas R. Lehman, P.A.
LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
Miami Center – 34th Floor
201 South Biscayne Blvd.
Miami, Florida 33131

Thomas R. Lehman, P.A. (Attorney Lehman shall serve a copy of this Order on all parties in interest and file a Certificate of Service reflecting same.)